WALTZER, Judge.
This is an appeal from a judgment of the Office of Worker’s Compensation, the honorable Edgar K. Corey, presiding, finding in favor of the plaintiff, Ruth Franklin, and against the defendants, Le Meridien Hotel and Highlands Insurance Co., jointly and in solido, finding plaintiff totally, temporarily disabled and awarding to her worker’s compensation at the rate of $262.00 per week from July 10, 1990 to the present and con- *65 tinning into the future as long as she is disabled with judicial interest on each past due installment from its due date until paid and all costs, less a credit for compensation paid.
The hearing officer provided the following written reasons for judgment:
“The parties have stipulated that the claimant was injured in an accident on October 15,1988 in the course and scope of her employment by the Employer. Her average weekly wage was $433.08. Compensation was paid at the rate of $262.00 from October 15, 1988 to July 10, 1990.
“Claimant was employed as a convention service manager. In this job she testified that she had to do a lot of walking, standing and occasionally lifting as much as thirty pounds. She stayed on the meeting room floor of the hotel during the meetings of conventions, moving from room to room and taking care of the guests. She injured herself when her right heel caught in a carpet split, causing her to fall to the floor on her left leg. Following the accident, she had two (2) surgeries and at the present time cannot walk further than a block without resting or sit for more than twenty-five (25) minutes without standing up. She also testified that some mornings she has trouble getting out of bed due to back pain.
“She also testified that she cannot return to any form of work because of chronic back pain, inability to walk long distances or climb stairs, inability to sit for very long and inability to be punctual in job attendance because of not knowing on any given morning whether she would be physically able to get out of bed. Her entire career has been in the clerical profession.
“The Defendant (sic) called to the stand Jean McCaffery, Vocational Rehabilitation Counselor. She interview(sic) the plaintiff on April 30, 1990. Mrs. McCaffery testified that she found jobs the plaintiff could do, according to her restrictions, which included personnel recruiter, inside sales lady/customer service, membership sales lady/AAA, hotel secretary, school board secretary. On some of these jobs there was no opening, according to her testimony, and on others the claimant was not told to report or there was no information as to whether the claimant would be accepted. The demeanor and tone of this witness was not impressive. She did not do the research. It was done by somebody else. She mumbled, talked low, spoke into the file and had to look through numerous papers before answering questions. She was not familiar with the file. Her affect was one of being unsure about her testimony. She admitted she had not done any job analyses to determine how much walking, standing or sitting was to be required on each job before, she submitted the job to the treating physician for approval.
“The treating physician was Dr. George Murphy. His deposition shows the plaintiff had lumbar disc surgery prior to her accident in October, 1988. After the accident, her symptoms of back pain increased. As a result she had disc surgery performed by Dr. Epps and lumbosacral fusion performed by Dr. Murphy. The fusion was not successful. It failed at L4-L5, and there is a non-union of the fusion at this point.
“The testimony of Dr. Murphy is that the plaintiff has had constant trouble with her back, both before and since the accident of 1988. She has been seeing this doctor often, and he has found numerous flare-up(sic) of symptoms. He has also treated her with numerous injections of Celestone to ease the pain. He testified she was a chronic pain patient, and while he signed off on several jobs, he testified that she should only try these jobs and that they had to be flexible, which meant that if she suffered pain on any day of the week, she would have to be permitted to leave the job. He also testified there was a big “if’ whether she could find such a job.
“On July 23, 1990, Dr. Murphy reported to the defendanVinsurer that the patient remain off work. On August 8, 1990 he reported that she had not been released to return to work and that the rehabilitation specialist had not made a conscientious effort to get a job for the plaintiff or see if *66 she could tolerate a specific job. On July-30, 1990, the defendant/insurer terminated compensation.
“The defendant/insurer also referred the claimant to Dr. Lee Moss. Dr. Moss testified that he agreed with the rehabilitation specialist. However, Dr. Moss saw the plaintiff only once and that it was for a second opinion as to surgery not to return to work.
“The insurer also referred the claimant to a physical therapist. The therapist found muscle tightness, atrophy of the muscles and weakness in the lower back. He recommended therapy to strengthen the muscles in the lower back and make them more flexible. He was of the opinion that she was not malingering. He said that she should participate in a comprehensive work hardening program to be able to complete more of the functional evaluation tests. Because of the pain she was able to complete only seven (7) out of seventeen (17) tests.
“The preponderance of the evidence shows that the plaintiff is suffering from chronic pain due to a very bad back. She has pathology in the back that accounts for the pain. There is no testimony that she is malingering. Nor is there any testimony that a flexible job has been found that is within her capabilities as to walking, sitting, standing, bending and stooping. The plaintiff has proved by clear and convincing evidence that she is suffering substantial pain causally connected with the accident in October, 1988, and that, as a result, she is unable to perform any work offered, tendered or otherwise proved to be available to her.”
Defendant has appealed, raising two specifications of error:
1. The hearing officer erred in finding that claimant was totally temporarily disabled after March 8, 1990.
2. The hearing officer applied the wrong . standard by requiring appellees to find appellant a job within the medical restrictions and her work experience.
Turning to the first specification of error, we note that the scope of appellate review in this matter was discussed in Lemoine v. Schwegmann Giant Supermarkets, 607 So.2d 708, 711 (La.App. 4th Cir., 1992), writ denied 609 So.2d 258 (La.1992), wherein the court stated:
“The issue of disability is determined by the totality of the evidence, including both lay and medical testimony. On appellate review, the trial court’s findings of work connected disability are entitled to great weight. They should not be disturbed where there is evidence before the trier of fact, which, upon its reasonable evaluation of credibility, furnishes a reasonable factual basis for the trial court’s findings, unless clearly wrong. The reviewing court should not disturb reasonable inferences of fact by the trial court, even though the reviewing court is of the opinion that other evaluations and inferences are as reasonable.” Guillory v. Solaco, Inc., 570 So.2d 139 (La.App. 3d Cir.1990) (citing Charles v. Aetna Casualty & Surety Co., 525 So.2d 1272 (La.App. 3d Cir.1988), writ denied 531 So.2d 480 (La.1988)).
Defendant argues that under Holmes v. International Properties, 611 So.2d 773 (La.App. 4th Cir., 1992) the trier of fact erred in finding plaintiff temporarily totally disabled because she had reached “maximum medical improvement”[1] which triggers permanent disability entitlement. In Holmes, Mr. Holmes was a 52 year old manual laborer with a sixth grade education and limited reading ability. Mr. Holmes had a successful total hip replacement resulting in maximum medical improvement. His doctor released him for sedentary to light work and a vocational rehabilitation expert found 12 approved types of employment and 5 actual jobs available to Mr. Holmes. In Holmes, this Court found that when “maximum medical improvement” is reached and the claimant is no longer in a period of recovery, his condition is deemed “permanent” and he is no longer entitled to temporary total disability benefits, rather he is entitled to permanent benefits.
*67 In his deposition which was admitted into evidence in lieu of live testimony, plaintiffs treating physician, Dr. George Murphy stated:
Q. And moving on to your March 8th report.
A. Let’s see. Okay.
Q. At that point you gave an opinion that she should be reevaluated by a rehabilitation company, is that correct, and I’m reading—
A. Correct. Because she still had a minor amount of problems with the back and at that time it did not look like there would be any flexibility to her scheduling where she worked to get in on part days, you know, whatever limited status to give it a try, and I didn’t feel that she was capable of going to a — given to try at a full regular work schedule, and so I recommended that it might be appropriate for — if a rehabilitation company could evaluate possibilities for future employment.
Q. She is 16 months post-op at this point, is that correct, March 8, 1990? The surgery was in December of 1988.
A. Yes. That’s about 16 months.
Q. 16 months. So this is somewhere within that time frame of reaching MMI of — had she reached MMI as of this point?
A. Let’s see. That was, what, March of ’90?
Q. March 8th of 1990.
A. Yes. She was pretty much stable at this time. The fusion had not fully healed. It looked like the L5-S1 level had fused pretty well but there was probably an incomplete fusion at 4-5, but it wasn’t something that we were considering proceeding with another surgery on. So she was — I would not have expected her to really get any better at that point in time, so we would consider that maximum improvement.
******
Q. But you still felt that she would be a candidate at least to see if she could do some work?
A. Yes.
(Tr. p. 147-149).
Like Holmes, the treating physician in the instant case has found that plaintiff has reached the point of “maximum medical improvement” and has released the plaintiff to sedentary to light employment. Thus under Holmes, the hearing officer was manifestly erroneous in finding plaintiff entitled to temporary total disability benefits and should have found her entitled to permanent disability benefits. See, Holmes v. International Properties, supra.
Having so concluded, we now address the inherent issue of Supplement Earnings Benefits under R.S. 23:1221(3). In Holmes, this court stated that “(s)upplemental earning benefits (SEB) are awarded to a worker who is able to perform some work, but who cannot earn at least 90% of his wages at the time of injury.” To quote Holmes, supplemental earnings benefits are calculated as follows:
... sixty-six and two thirds percent of the difference between the average monthly wages at the time of injury and average monthly wages earned or average monthly wages the employee is able to earn in any month thereafter ... Average monthly wages shall be computed as four and three-tenths times the [average weekly wages].
Plaintiffs pay stub indicates that she worked for 40 hours per week, earning $433.08 weekly or $10.83 per hour. Plaintiffs Exhibit 6 Jean McCaffery’s letter indicates that the positions she had found for plaintiff paid between $5.00 and $11.50 per hour. In Holmes the court used the lowest hourly wage, thus we do the same.
Avg monthly wages before accident ($433.08 per week x 4.3): $1862.25
Avg monthly wages claimant is able to earn: $ 860.00
Difference: $1002.25
66⅜ of 1002.25: $ 668.10
$668.10 monthly equals $155.37 weekly
SEB of $155.37 weekly shall apply from March 8, 1990, the date the treating physician found “maximum medical improvement” and shall not exceed 520 weeks.
*68 Turning to appellant’s second specification of error, we note that the instant case is very similar to this Court’s ruling in James v. State Dept. of Health and Human Resources, 572 So.2d 701 (La.App. 4th Cir., 1990), writ denied 575 So.2d 395 (La.1991) wherein this Court found that the insurer discontinued benefits on the basis of a report of a clinical rehabilitation expert hired by them which conflicted with the treating physician’s diagnosis that plaintiff was unable to return to work. The trial court found that the rehabilitation expert was not as convincing as the physician.
“The trier of fact has vast discretion in assessing the credibility of witnesses. Disability under the Louisiana Worker’s Compensation Act is a legal rather than purely medical determination. A trier of fact may reject the opinion of a medical expert depending upon the impression that the expert’s qualifications, credibility, and testimony make. Green v. Cement Products Services, Inc., 526 So.2d 493 (La.App. 1st Cir., 1988).
* ⅜ * * * *
“After hearing the results of the independent medical evaluation and reviewing the testimony of Ms. James’ doctor, Judge Ganucheau simply determined that Ms. James’ treating doctor, Dr. King accurately determined that she could not return to work until May 1, 1990. The trial judge correctly imparted more weight to Ms. James’ treating physicians’s testimony than to the one time examination performed by the examining neurosurgeon, Dr. Schumacher.”
(At 703).
In the instant case, the rehabilitation expert, Jean McCaffery determined that as of the date of her interview, April 30, 1990 there was employment available to plaintiff. In conflict with Ms. McCaffery’s findings are Dr. George Murphy’s findings that plaintiff should not return to full employment. Dr. Murphy’s findings were reaffirmed on July 23, 1990 and August 8, 1990, after Ms. McCaffery’s interviews of April 30, 1990. For the reasons discussed, we cannot conclude that the fact finder erred in his credibility determination against Ms. McCaffery. The judgment is reversed as to temporary total disability. We conclude that plaintiff is unable to earn 90% of her wages and is entitled to weekly supplemental earnings of $155.37 from March 8, 1990, not to exceed 520 weeks.

REVERSED AND RENDERED.

. We specifically do not consider whether such an automatic triggering is valid when the “maximum medical improvement" is equal to complete or near complete recovery.