933 So.2d 207 (2006)
Arthur THOMPSON
v.
CITY OF NEW ORLEANS.
No. 2005-CA-0947.
Court of Appeal of Louisiana, Fourth Circuit.
May 24, 2006.
*208 Alan B. Tusa, Tusa & Richards, L.L.C., Covington, LA, for Appellant, Arthur Thompson.
Wayne J. Fontana, Thomas Louis Colletta, Jr., Courtenay, Hunter & Fontana, L.L.P., New Orleans, LA, for Appellee, City of New Orleans.
(Court Composed of Judge JAMES F. McKAY, III, Judge TERRI F. LOVE, Judge LEON A. CANNIZZARO, JR.).
LEON A. CANNIZZARO, JR., Judge.
This case involves a claim for workers' compensation benefits. Arthur Thompson is appealing a judgment awarding him supplemental earnings benefits on the grounds that (1) the amount and rate of the supplemental earnings benefits that he was awarded were incorrectly calculated, (2) the benefits were improperly reduced as a result of his alleged failure to cooperate with vocational rehabilitation efforts, and (3) he was entitled to an award for attorney's fees, penalties, and costs.

STATEMENT OF FACTS AND PROCEDURAL HISTORY
Mr. Thompson, an employee of the City of New Orleans in the New Orleans Police Department (the "NOPD"), was injured while he was directing traffic at the Louisiana Superdome. Mr. Thompson testified at his deposition that after he attempted to redirect the driver of a vehicle who was entering a restricted area, the driver "floored the vehicle" while Mr. Thompson was "standing directly in front of it." Mr. Thompson was forced to jump out of the way of the vehicle to avoid being hit. Mr. Thompson further stated that "when I did jump out of the way I felt my back crack, a little pain, and my knee also cracked." He experienced back pain immediately, and *209 the next morning he noticed that his knee was swollen.
Mr. Thompson further testified in his deposition that he had retired from the police department and was working as a security guard for a gated community. He said that the security guards "are gatekeepers, basically." He stated that he worked one day a week for nine hours, on Fridays, and that he earned $13.31 per hour. He also said that he sometimes worked more than one day a week when other security guards were unable to work or were on vacation.
During his career as a police officer, Mr. Thompson made a number of claims for workers' compensation benefits as a result of injuries that he received in connection with his job. He was treated for his work related injuries by Robert Edwin Ruel, Jr., M.D., an orthopedic surgeon. At his deposition, Dr. Ruel testified that he had first treated Mr. Thompson in 1981. Dr. Ruel further testified that the injury involved in the instant case occurred in the middle of March 2000. Dr. Ruel said that when he saw Mr. Thompson in early April of that year, he diagnosed Mr. Thompson with a sprained right knee and a sprained lower back. A month later, Dr. Ruel ordered an MRI[1] on Mr. Thompson's right knee, and Dr. Ruel stated that "I took him out of work at the time of the office visit." The MRI indicated that the knee had been injured, and it showed degenerative changes in the knee due to arthritis.
In September 2000, Dr. Ruel performed arthroscopic surgery[2] on Mr. Thompson's right knee to remove a number of pieces of bone that were dislodged due, in part, to the trauma that the knee incurred when it was injured in March of that year. After the surgery, Mr. Thompson underwent physical therapy. His knee improved until he reached maximum medical improvement in September 2001, a year after the arthroscopic surgery. Dr. Ruel said that, as of that date, he did not think that Mr. Thompson's condition would worsen, and he also said that Mr. Thompson's recovery had reached a plateau. Dr. Ruel testified that in his opinion, as of September 2001, Mr. Thompson could function full time in a job similar to his job as a security guard for a gated community, if there were "restrictions on lifting, prolonged walking, climbing, jumping, running, et cetera." Dr. Ruel also testified, however, that Mr. Thompson would not be a particularly dependable employee, because he would have to miss work periodically due to his physical problems.
Dr. Ruel stated in his deposition that Mr. Thompson had a ten percent permanent physical disability of his lower right extremity. He also said that Mr. Thompson continued to suffer from problems with his right knee. Mr. Thompson's right knee "gives way," and "[g]oing up and down stairs and bending his knee is bothersome." His "[k]nee would still would [sic] crack with prolonged sitting and raising from a seated position."
On October 29, 2001, a Partial Consent Judgment was signed in the instant case. The judgment held that Mr. Thompson was entitled to temporary total disability benefits as a result of his injuries in March 2000. The benefits were payable from May 7, 2000, through the date of his retirement *210 from the NOPD in February 2001. The total amount awarded to Mr. Thompson in the judgment was $14,701.72. Additionally, the City was ordered to pay Mr. Thompson a penalty of $1,835.89 to settle his claims that the City had arbitrarily and capriciously failed to pay. All other issues in the case were "left open, including but not limited to, the calculation of temporary total disability and/or supplemental earnings benefits owed . . . for the period April 7, 2001 through the present and continuing." The City was also ordered to pay Mr. Thompson's medical bills that were related to his job injury.
The record before us contains a number of vocational rehabilitation reports that were introduced into evidence. The initial rehabilitation report stated that Mr. Thompson's file was received by Resolution Network, a vocational rehabilitation provider, on September 13, 2001. According to the initial report, a number of telephone calls were made in an unsuccessful attempt to contact Mr. Thompson's attorney. On November 19, 2001, Rene P. Zeringue, III, a rehabilitation specialist with Resolution, wrote to Mr. Thompson's attorney to arrange a date for conducting an initial rehabilitation survey. An appointment was scheduled for December 13, 2001, but the appointment had to be cancelled, because Mr. Thompson was hospitalized at that time. In early January 2002, Mr. Zeringue advised Mr. Thompson's attorney in a letter that he wanted to meet with Mr. Thompson when it became appropriate. At the end of January 2002, and in the middle of February 2002, Mr. Zeringue corresponded further with Mr. Thompson's attorney, but as of the date of the initial rehabilitation report, March 18, 2002, Mr. Zeringue had not received any response from the attorney.
In a second report, Mr. Zeringue stated that he had met with Mr. Thompson at the end of April 2002. This report was rendered at the beginning of May 2002.
In the middle of June 2002, another report was issued. In the June report, Mr. Zeringue related that vocational interest testing had been administered to Mr. Thompson. According to the June report, after the testing was completed, Mr. Zeringue consulted with Mr. Thompson's attorney and asked to have Mr. Thompson accompany him to the job service office so that Mr. Thompson could register for the service. Mr. Thompson's attorney, however, said that Mr. Thompson was currently employed in a position that paid $13.00 per hour. Therefore, the attorney "did not see the logic in finding Mr. Thomson a new job at this time, as she has no medical documentation that Mr. Thompson can work more than 1 day a week, nor would I be able to find him a position that pays more than $13 an hour."
During the reporting period covered by Mr. Zeringue's report rendered in the middle of July 2002, a transferable skills analysis based on Mr. Thompson's work history was performed. The July report included the results of the analysis, and Mr. Zeringue noted that Dr. Ruel had released Mr. Thompson to work "in the sedentary to light range working an 8 hour work day."
A report issued by Mr. Zeringue in October 2002, stated that at the beginning of the month, four potential job opportunities were brought to the attention of Mr. Thompson's attorney. At the beginning of December 2002, Mr. Zeringue issued another report in which he stated that notice of additional job opportunities had been forwarded to Mr. Thompson's attorney so that Mr. Thompson could apply for the jobs. Mr. Thompson had indicated that he had considered the possible employment opportunities that had been previously recommended to him but none of the jobs *211 were available when he inquired further about them. The report noted that Mr. Thompson's inquiry had been made over a month after he had been advised of the possible jobs.
In Mr. Zeringue's January 2003 report and in his February 2003 report, he noted that he had continued to advise Mr. Thompson of possible job opportunities. In his April 2003 report, Mr. Zeringue stated that he had forwarded several job descriptions to Dr. Ruel for his approval. Finally, in his last report, which was issued at the beginning of May 2003, Mr. Zeringue reported that he had contacted all of the prospective employers that he had recommended to Mr. Thompson. Only a few of the employers responded to Mr. Zeringue's inquiries, but none of them indicated that Mr. Thompson had applied for a job. Mr. Zeringue's May 2003 report stated that Mr. Thompson's vocational rehabilitation case would be closed.
At the trial in the instant case, the parties stipulated that Mr. Thompson was injured in the course and scope of his employment with the City and that his average weekly wage for the purpose of calculating supplemental earnings benefits was $2,792.00. The parties further stipulated that if Mr. Thompson were to testify at the trial, he would say that he had submitted an application for employment with each of the potential employers whose name was supplied to him by Mr. Zeringue and that he had not received any responses to his applications. Finally, the parties stipulated that Mr. Thompson had been a police officer for the NOPD.
A number of joint exhibits were admitted into evidence at the trial. The exhibits included the depositions of Dr. Ruel and of Mr. Thompson, letters from Mr. Thompson's employer in connection with Mr. Thompson's job as a security guard, the vocational rehabilitation reports prepared by Mr. Zeringue, the reports of Mr. Thompson's earnings that he was required to furnish in connection with his job as a security guard,[3] and Mr. Thompson's paycheck stubs from that job. The parties stipulated that if Mr. Thompson were to testify, he would testify that the paycheck stubs were the ones that he had received from his employer.
A final judgment was rendered approximately five months after the trial. The judgment held that Mr. Thompson was entitled to supplemental earnings benefits of $761.68 per month beginning in April of 2001. The judgment reduced the supplemental earnings benefits that were awarded by fifty percent for the months of April 2001, through April 2002, because the workers' compensation judge found that Mr. Thompson failed or refused to cooperate with the vocational rehabilitation efforts that were made for his benefit. No reasons for judgment were given.
After the trial both Mr. Thompson and the City filed motions for a new trial. Mr. Thompson's motion was denied, and he filed a devolutive appeal. The City's motion for a new trial was granted, but the City withdrew its motion for a new trial and did not file an appeal.

DISCUSSION

Standard of Review
In Dean v. Southmark Construction, 03-1051 (La.7/6/04), 879 So.2d 112, 117, the Louisiana Supreme Court stated that "[i]n worker's compensation cases, the appropriate *212 standard of review to be applied by the appellate court to the OWC's [Office of Workers' Compensation's] findings of fact is the `manifest error-clearly wrong' standard." The Supreme Court further stated that "the findings of the OWC will not be set aside by a reviewing court unless they are found to be clearly wrong in light of the record viewed in its entirety." Id. Additionally, a court of appeal "may not reverse the findings of fact of the lower court even when convinced that had it been sitting as the trier of fact, it would have weighed the evidence differently." Id.
In Fite v. Louisiana Title Co., 02-2607 (La.6/27/03), 852 So.2d 983, 985, the Supreme Court also stated that "[i]t is well settled in Louisiana jurisprudence that the manifest error standard of appellate review applies in compensation actions even when the evidence before the trier of fact consists solely of written reports, records, and depositions." In Banks v. Industrial Roofing & Sheet Metal Works, Inc., 96-2840 (La.7/1/97), 696 So.2d 551, 556, also a workers' compensation case, the Supreme Court said that "[w]here there are two permissible views of the evidence, a factfinder's choice between them can never be manifestly erroneous or clearly wrong."
In reviewing questions of law, however, this Court is required to determine whether the lower court's interpretation of the law is correct. Glass v. Alton Ochsner Medical Found., 02-0412 (La.App. 4 Cir. 11/06/02), 832 So.2d 403, 405. Where a decision of a lower court is based on an erroneous application of law rather than on a valid exercise of discretion, the decision in not entitled to the deference of this Court. See Kem Search, Inc. v. Sheffield, 434 So.2d 1067, 1071-72 (La.1983).

Assignments of Error
Mr. Thompson has raised four assignments of error. In his assignments of error, he contends that the workers' compensation judge committed manifest error or abused his discretion such that this Court should reverse the judgment rendered by the workers' compensation judge.

Assignment of Error No. 1: The trial court committed manifest error by penalizing the appellant and reducing his supplemental earnings benefits.
Mr. Thompson asserts that the workers' compensation judge erred in finding that he refused to cooperate with the vocational rehabilitation counselor. Therefore, he further asserts that his supplemental employment benefits should not have been reduced to penalize him for his refusal to cooperate.
La. R.S. 23:1226(A) provides that an employee whose injury is covered by the workers' compensation laws is entitled to prompt rehabilitation services if the injury precludes the employee from earning wages equal to those earned prior to the injury. La. R.S. 23:1226(B)(3)(a) further provides that the employer "shall be responsible for the selection of a licensed professional vocational rehabilitation counselor to evaluate and assist the employee in his job placement or vocational training." La. R.S. 23:1226(B)(3)(c) penalizes an employee who refuses to "accept rehabilitation as deemed necessary by the worker's [sic] compensation judge" by reducing the weekly compensation benefits otherwise owed to the employee by fifty percent for each week during which rehabilitation is refused. The reduction in benefits also applies to supplemental earnings benefits.
In the instant case the vocational rehabilitation counselor was selected by the City, and the counselor initially contacted Mr. Thompson's attorney in the middle of November 2001. The workers' compensation judge, however, applied the penalty *213 established in La. R.S. 23:1226(B)(3)(c) to Mr. Thompson's benefits from April of 2001, through April of 2002. According to the rehabilitation reports in the record, the rehabilitation counselor did not receive Mr. Thompson's file until September 13, 2001. Although Mr. Zeringue, Mr. Thompson's rehabilitation counselor, attempted to contact Mr. Thompson's attorney during the months of September and October 2001, he did not receive a response from the attorney until he sent the attorney a letter on November 19, 2001. Mr. Thompson's attorney then responded to Mr. Zeringue and arranged a meeting between Mr. Zeringue and Mr. Thompson for December 13, 2001. Unfortunately, Mr. Thompson was hospitalized and could not meet with Mr. Zeringue then.
Although Mr. Zeringue attempted to reestablish contact with Mr. Thompson's attorney between January 8, 2002, and March 18, 2002, he was unable to do so. Finally, he was given permission by Mr. Thompson's attorney to meet with Mr. Thompson on April 30, 2002.
The workers' compensation judge found that Mr. Thompson failed to participate in the vocational rehabilitation services provided by the City from April 2001, until April 2002. From April 2001, until September 13, 2001, the City had not selected a vocational rehabilitation counselor. Therefore, it was clearly wrong for the workers' compensation judge to find that Mr. Thompson failed to cooperate with the City's rehabilitation efforts during that time period. We further find that Mr. Thompson was cooperating with the City's rehabilitation efforts until December 13, 2001, and his failure to attend the meeting scheduled for that date was clearly excusable, because he was hospitalized. Thus, we find that the workers' compensation judge erred in reducing the benefits owed to Mr. Thompson from April 1, 2001, through December of that year.
Additionally, there is nothing in the record to suggest why the first meeting between Mr. Zeringue and Mr. Thompson was not held until April 30, 2002. It is, however, well settled that "Louisiana courts should interpret worker's [sic] compensation laws liberally in order to afford coverage." Coats v. American Tel. & Tel. Co., 95-2670 (La.10/25/96), 681 So.2d 1243. 1245. Therefore, we must construe the penalty provisions of La. R.S. 23:1226(B)(3)(c) liberally in favor of Mr. Thompson by giving him the benefit of any doubt that the delay in the meeting from December 13, 2001, to April 30, 2002, was not a result of any fault on his part. Thus, we find that it was clearly wrong for the workers' compensation judge to have reduced Mr. Thompson's benefits during that period.
Mr. Thompson's benefits were improperly reduced during the period from April 2001, until April 2002. Therefore, this assignment of error has merit.

Assignment of Error No. 2: The trial court abused its discretion in giving any weight to the reports of the City's vocational rehabilitation counselor.
In this assignment of error, Mr. Thompson argues that the vocational counselor failed to provide him with meaningful vocational rehabilitation counseling. Specifically, he asserts that the jobs recommended to him by Mr. Zeringue were not suitable jobs, because he either could not physically perform the jobs or did not have the necessary experience or education to perform the jobs. The City counters Mr. Thompson's argument by claiming that the issue of whether proper vocational rehabilitation was given to Mr. Thompson was not asserted in the hearing before the workers' compensation judge and, therefore, cannot be asserted on appeal.
*214 In Segura v. Frank, 93-1271, 93-1401 (La.1/14/94), 630 So.2d 714, 725, the Louisiana Supreme Court stated that "[t]he general rule is that appellate courts will not consider issues raised for the first time on appeal." See also Dean v. Southmark Constr., 03-1051 (La.7/6/04), 879 So.2d 112, 116. There is nothing in the record before us to indicate that Mr. Thompson raised the issue of the suitability of the jobs recommended to him at the hearing before the workers' compensation judge insofar as the experience and education that were needed to perform the jobs. The record did, however, contain a description of the jobs that were recommended, and the parties stipulated that if Mr. Thompson were to testify, he would testify that he had applied for the jobs but had received no job offers.
Mr. Thompson did testify that the jobs recommended for him were not suitable, because they required him to work more than one day a week.[4] Additionally, Mr. Thompson stated that he was unable to meet the physical requirements of the jobs even though Dr. Ruel had approved some of the jobs. Even so, the workers' compensation judge reviewed the evidence that was before him and, apparently, determined that the jobs were suitable for Mr. Thompson, because the judge used the wages for those jobs as the basis upon which he determined Mr. Thompson's supplemental employment benefits.
Mr. Thompson did not present any evidence that the jobs recommended by Mr. Zeringue were unsuitable, except for his statements that he was not able to physically perform some of the jobs, and the workers' compensation judge apparently found the jobs to be suitable. We do not find that the judge's findings were either manifestly erroneous or clearly wrong. This assignment of error is without merit.

Assignment of Error No. 3: The trial court committed manifest error in calculating the appellant's monthly supplemental earnings benefits rate.
La. R.S. 23:1221(3) sets forth the amount of compensation that a worker with a permanent partial disability is entitled to be paid. When an employee suffers an injury that results in the employee's inability to earn wages equal to at least ninety percent of the wages that the employee earned at the time of the injury, the employee is entitled to supplemental earnings benefits in an amount equal to sixty-six and two thirds percent of the difference between the average monthly wage that the employee was earning at the time of the injury and the average monthly wage the employee is able to earn after the injury. La. R.S. 23:1221(3)(a). The compensation is payable whether or not the employee is employed after the injury in the same or a similar occupation as the one in which the employee was originally engaged and whether or not the employee was particularly suited to the new job on the basis of the employee's education, training, and experience. Id.
La. R.S. 23:1221(3)(b) further provides that the amount of wages an employee is able to earn after an injury shall not be less than the amounts actually received in earnings.[5] La. R.S. 23:1221(3)(c)(ii), however, *215 states that notwithstanding the provisions of La. R.S. 23:1221(3)(b), if an employee who was injured is not engaged in any employment or is earning wages less than the employee is able to earn, the determination of the wages that the employee is able to earn shall be no less than the amount the employee would have received in any employment the employee was physically able to perform that was (1) offered to the employee by an employer or (2) available to the employee in the employee's or the original employer's community or reasonable geographic region.
In the instant case Mr. Zeringue, the rehabilitation counselor, recommended several jobs to Mr. Thompson. Mr. Zeringue chose the jobs that he recommended based on Mr. Thompson's interests and transferable skills as determined by the vocational testing that Mr. Zeringue performed. Mr. Zeringue had several of the jobs approved by Dr. Ruel as being positions that Mr. Thompson was physically capable of performing.
It was stipulated that Mr. Thompson would have testified at the trial that he had applied for the jobs recommended to him but that he had received no job offers. The record indicates that Mr. Thompson learned that some of the jobs were no longer available at the time he planned to apply for them. Mr. Zeringue, however, stated in one of his reports that Mr. Thompson did not inquire about those jobs until more than a month after Mr. Zeringue recommended them.
To obtain supplemental earnings benefits the employee must prove by a preponderance of the evidence that an injury covered by the workers' compensation laws resulted in the employee's inability to earn at least ninety percent of the amount of the employee's wages prior to the injury. Banks v. Indus. Roofing & Sheet Metal Works, Inc., 96-2840 (La.7/1/97), 696 So.2d 551, 556. In the instant case, however, the City has not challenged the workers' compensation judge's finding that Mr. Thompson was not able to earn at least ninety percent of his prior earnings.
Therefore, the only contested issue regarding the supplemental benefits awarded to Mr. Thompson is the amount of the benefits. The workers' compensation judge calculated the amount of Mr. Thompson's supplemental benefits based on an average of the wages that were paid by the employers whose jobs were deemed suitable for Mr. Thompson. Mr. Thompson, however, contends that the calculations should not have been based on an average of the wages, and he has urged on appeal that either the amount of the federal minimum hourly wage or the amount of actual wages he earned as a security guard working one day a week should have been used to calculate his supplemental earnings benefits.
The employer may show the amount an employee is able to earn through the testimony of a vocational rehabilitation expert. Ambrose v. Fluor Constructors, Inc. 537 So.2d 1176, 1181 (La. App. 4th Cir.1988). In the instant case, Mr. Zeringue, a vocational rehabilitation counselor, evaluated Mr. Thompson's abilities and interests and determined what skills from his job as a police officer could be transferred to other jobs, and Dr. Ruel approved Mr. Thompson for full time sedentary to light work based on Mr. Thompson's physical condition.
Mr. Zeringue recommended to Mr. Thompson the following job opportunities:
1. Distribution officer, paying $8.00 per hour;
2. Security director, paying $12.00 per hour, depending on experience;
3. Customer service associate, paying $8.50 to $9.50 per hour;
*216 4. Cage cashier, paying $7.50 to $11.65 per hour;
5. Dispatcher, paying $25,000 to $30,000 annually;
6. Claim support staff, paying $7.50 to $9.00 per hour;
7. PBX operator, paying $7.50 per hour;
8. Fire hole watch, paying $7.50 per hour;
9. Front desk agent, paying $8.00 to $9.00 per hour;
10. Sales assistant, paying $9.50 per hour;
11. Merchandiser, paying $17,000 to $18,500 annually;
12. Pastry representative, paying $8.50 to $9.50 per hour;
13. Customer service representative, paying $10.00 per hour; and
14. Patient registration representative, paying $7.50 to $8.50 per hour.
Additionally, Dr. Ruel specifically approved nine of the jobs as being jobs that Mr. Thompson was physically capable of performing, and he was in the process of reviewing another four when Mr. Zeringue prepared the closure report for Mr. Thompson's vocational rehabilitation. Finally, the jobs listed above were located in New Orleans or the immediately surrounding area.
There was evidence in the record sufficient to demonstrate that jobs suitable for Mr. Thompson's physical limitations and his transferable skills existed within the community. Also, there was sufficient evidence in the record of the wages that Mr. Thompson could be expected to earn in those jobs. Furthermore, the record indicates that there were actual positions available for the jobs listed above, although in the case of some of the jobs, the record shows that Mr. Thompson found them to be unavailable when he checked on their availability over a month after they were recommended to him. The parties also stipulated that if Mr. Thompson were to testify, he would testify that he had received no job offers even though he had applied to some of the jobs. Finally, the record demonstrates that at least some of the jobs recommended to Mr. Thompson were actual positions that were available when Mr. Zeringue advised Mr. Thompson of the jobs.
Mr. Thompson, however, contends that the workers' compensation judge did not correctly calculate the amount of supplemental earnings benefits to which he was entitled. In Dabney v. Boh Brothers Construction Co., 97-1041, 97-2502 (La.3/11/98), 710 So.2d 1106, 1115, this Court stated that "[t]he lowest figure presented by the employer's evidence of the claimant's post-injury earning capacity is the appropriate sum with which to reduce his pre-injury wages" for purposes of calculating the amount of supplemental earnings benefits to which the employee is entitled. See also Franklin v. Hotel Le Meridian, 93-1328 (La.App. 4 Cir. 3/15/94), 634 So.2d 64, 65; Holmes v. Int'l Properties, 611 So.2d 773 (La.App. 4th Cir. 1992).[6]
In the instant case, the lowest wage figure for the jobs recommended to Mr. Thompson by Mr. Zeringue was $7.50 per hour. The workers' compensation judge did not use this figure but, apparently, used a composite wage from the jobs rather *217 than the lowest wage. This was legal error on the part of the judge.
The correct way to calculate the supplemental earnings benefits to which Mr. Thompson is entitled is to do the following:
(1) First, calculate ninety percent of Mr. Thompson's earnings prior to his accident. The parties stipulated that he earned $2,790.00 per month before the accident. Ninety percent of $2,790.00 is $2,512.80. If Mr. Thompson cannot earn at least $2,512.80 per month after his accident, under La. R.S. 23:1221(3), he is entitled to supplemental earnings benefits. None of the jobs recommended to Mr. Thompson by Mr. Zeringue would have paid as much as $2,512.80 per month.
(2) Second, calculate the amount that Mr. Thompson can earn after his accident. The lowest hourly wage for the jobs that were identified as suitable for Mr. Thompson by Mr. Zeringue was $7.50 per hour. Based on a forty-hour workweek, Mr. Thompson could earn $1,300 per month.
(3) Third, determine whether Mr. Thompson earned more at his job as a security guard than he could have earned at the lowest wage for the jobs that were identified as being suitable for him after his accident. Mr. Thompson earned $13.31 per hour one day a week, which amounts to a monthly salary of $461.41, based on an eight-hour day, or $519.09, based on a nine-hour day. Because the jobs that were identified as suitable for Mr. Thompson command at the minimum a monthly salary of $1,300 per month, this amount should have been used as the monthly salary upon which Mr. Thompson's supplemental earnings benefits were calculated.
4. Fourth, subtract the $1,300 monthly wage that Mr. Thompson could have earned after his accident from the $2,792.00 monthly wage that he earned prior to his accident, and multiply the difference by sixty six and two thirds percent to determine his monthly supplemental earnings benefit. That amount is $994.67.
We find that the workers' compensation judge committed legal error in calculating the amount of supplemental earnings benefits to which Mr. Thompson is entitled. The monthly supplemental earnings benefit that the City owes to Mr. Thompson is $994.67.
Mr. Thompson is correct that the workers' compensation judge did not properly calculate his supplemental earnings benefit. This assignment of error has merit, and Mr. Thompson is entitled to receive monthly supplemental earnings benefits in the amount of $994.67, rather than $761.68, as calculated by the workers' compensation judge.

Assignment of Error No. 4: The trial court erred in failing to award penalties, costs, and attorneys' fees to the appellant.
Mr. Thompson contends that he should have been awarded attorneys' fees, costs, and penalties in connection with his workers' compensation claim, because the City has not paid any benefits to him since the consent judgment ordering that the City pay certain benefits, together with attorneys' fees, interest, and penalties, was signed in October 2001. The consent judgment stated that all issues in the case that were not addressed in the consent judgment "are left open, including but not limited to, calculation of temporary total disability and/or supplemental earnings benefits owed by the defendant/employer to the claimant Arthur Thompson for the period April 7, 2001 through the present and continuing."
La. R.S. 23:1201(I) provides that an employer or a workers' compensation insurer that discontinues the payment of claims that are due under the workers' compensation laws shall be subject to the payment of a penalty and reasonable attorneys' *218 fees, if the discontinuance is found to be "arbitrary, capricious, or without probable cause." La. R.S. 23:1201(I) was enacted in 2003, to replace La. R.S. 23:1201.2, which was in effect at the time of Mr. Thompson's injury. La. R.S. 23:1201.2, which was repealed in 2003, provided that an employer or insurer that discontinued payment of workers' compensation claims was subject to the payment of attorney fees for the prosecution and collection of the claims, if the discontinuance was found to be arbitrary, capricious, or without probable cause.
In Authement v. Shappert Engineering, 02-1631 (La.2/25/03), 840 So.2d 1181, 1188-89, the Louisiana Supreme Court stated:
The determination of whether an employer or insurer should be cast with penalties and attorney fees in a workers' compensation action is essentially a question of fact. Factual findings are subject to the manifest error or clearly wrong standard of review.
In Frith v. Riverwood, 04-1086 (La.1/19/05), 892 So.2d 7, 15, the Supreme Court stated that "[t]he crucial issue for determining whether an employer's actions are arbitrary and capricious is whether the employer can articulate an objective reason for discontinuing benefits at the time it took the action."
In Williams v. Rush Masonry, Inc., 98-2271 (La.6/29/99), 737 So.2d 41, 46, the Supreme Court also stated that "[a]wards of penalties and attorney's fees in workers' compensation are essentially penal in nature, being imposed to discourage indifference and undesirable conduct by employers and insurers." The Supreme Court further stated that "[a]lthough the Workers' Compensation Act is to be liberally construed in regard to benefits, penal statutes are to be strictly construed." Id. Finally, in Williams, the Supreme Court defined arbitrary and capricious behavior in discontinuing workers' compensation benefits as behavior consisting of willful and unreasoning action, without consideration and regard for facts and circumstances, or behavior based on seemingly unfounded motivation. Id.
The Louisiana Supreme Court has also considered the circumstances under which an appellate court should reverse the decision of a workers' compensation judge denying penalties and attorneys' fees. In J.E. Merit Constructors, Inc. v. Hickman, 00-0943 (La.1/17/01), 776 So.2d 435, 438, the Supreme Court found that an employer's actions in terminating an employee's supplemental earnings benefits did not rise to the level of being arbitrary and capricious even if the actions were legally incorrect. The Supreme Court stated that "[i]t would very rarely be appropriate for an appellate court to award attorney's fees based on employer actions which the trier of fact previously found did not rise to the level of being arbitrary and capricious (and in fact found to be meritorious.)" Id. (emphasis added); see also Willis v. Alpha Care Home Health, 01-0638 (La.6/15/01), 789 So.2d 567, 568, where the Supreme Court reiterated its position in the Hickman case.
Based on the foregoing discussion, we do not find that the instant case is the very rare case in which it would be appropriate for this Court to award attorneys' fees or penalties after the workers' compensation judge determined that they should not be awarded. Although the workers' compensation judge found in favor of Mr. Thompson on the issue of his entitlement to supplemental earnings benefits, there is sufficient evidence in the record to support the judge's denial of attorneys' fees and penalties on the basis that the City had a reasonable basis for contesting Mr. Thompson's claim for benefits.
*219 There was evidence that the wages reported by Mr. Thompson in connection with his jobs as a security guard were not completely accurate, and the language in the consent judgment in this litigation could have been interpreted by the City to mean that it was not required to continue paying additional benefits to Mr. Thompson until a determination of Mr. Thompson's eligibility for, and the amount of, supplemental earnings benefits had been made. Therefore, we do not find the workers' compensation judge's decision on the issue of attorneys' fees and penalties to have been clearly wrong or manifestly erroneous.
Mr. Thompson was not entitled to an award of attorney's fees, penalties, costs, or expenses. Thus, this assignment of error is without merit.

CONCLUSION
The judgment of the workers' compensation judge is amended to provide for supplemental earnings benefits in the amount of $994.67 per month. The judgment is further amended to reverse the fifty percent reduction in the supplemental earnings benefits owed from April 2000, through April 2001. In all other respects, the judgment of the workers' compensation judge is affirmed.
JUDGMENT AMENDED IN PART AND AFFIRMED AS AMENDED.
NOTES
[1] MRI, an acronym for magnetic resonance imaging, refers to a technique used to create images of organs of the body and other living tissue.
[2] Arthroscopic surgery is a procedure that is used to visualize, diagnose, and treat joint problems with an arthroscope, a small fiber optic camera. Using an arthroscope to perform the surgery eliminates the need to open the joint with a large incision.
[3] Mr. Thompson was required by La.R.S. 23:1221(3)(f) to report his monthly earnings to his employer. There were some discrepancies between the amounts he reported and the amounts shown on his paycheck stubs.
[4] Dr. Ruel found, however, that Mr. Thompson was able to work a normal workweek in a light or sedentary job.
[5] The workers' compensation laws establish a method to be used to determine what an employee is deemed to be able to earn. If an employee actually earns more than he is deemed to be able to earn under the workers' compensation laws, the amount of the employee's actual earnings is used to calculate any supplemental earnings benefits to which the employee is entitled.
[6] We note that in its brief, the City cites Daigle v. Sherwin-Williams Co., 545 So.2d 1005 (La.1989), for the proposition that the average, rather than the lowest, wage paid by jobs identified during the vocational rehabilitation process as being suitable for an employee should be used in calculating the employee's supplemental earnings benefit. We do not read Daigle to hold that the average, rather than the lowest, wage is required to be used in all cases.